UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY ANN MOODY,

                Plaintiff,                    CIVIL ACTION NO. 10-11684

                v.                        DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF                  MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.   PROCEDURAL HISTORY

### A.   *Proceedings in this Court*

On April 26, 2010, Plaintiff filed the instant suit seeking judicial review of the

Commissioner's decision disallowing benefits (Dkt. No. 1).  Pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the

purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of

disability and disability insurance benefits (Dkt. No. 2).  This matter is currently before the Court

on cross-motions for summary judgment (Dkt. Nos. 16, 23).

### B.   *Administrative Proceedings*

Plaintiff filed the instant claims on November 17, 2004, alleging that she became unable

to work on July 15, 1997 (Tr. 23, 57-59).  The claim was initially disapproved by the

Commissioner on March 17, 2005 (Tr. 23).  Plaintiff requested a hearing and on June 21, 2007,

Plaintiff appeared with counsel before Administrative Law Judge (ALJ) J. Thomas McGovern,

-1-

who considered the case *de novo*.  In a decision dated November 29, 2007, the ALJ found that

Plaintiff was not disabled (Tr. 20-32).  Plaintiff requested a review of this decision on December

20, 2007 (Tr. 18-19).  The ALJ's decision became the final decision of the Commissioner when,

after the review of additional exhibits[1] (AC-1-3, Tr. 220-227), the Appeals Council, on March 9,

2010, denied Plaintiff's request for review (Tr. 5-8).

In light of the entire record in this case, I find that substantial evidence supports the

Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is

**RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's

motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

II.     **STATEMENT OF FACTS**

  *A.     ALJ Findings*

Plaintiff was 27 years old on her alleged disability onset date (July 15, 1997), and 34

years old on her date last insured (December 31, 2004)[2] (Tr. 25).

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

[2] The expiration of Plaintiff's insured status is also known as her "date last insured."  For purposes of Disability Insurance benefits, Plaintiff bears the burden of showing that she became disabled prior to her date last insured of December 31, 2004.  *See Moon v. Sullivan*, 923  F.2d 1175, 1182 (6th Cir. 1990).  Further, Plaintiff must show that any disability continued until at least one year before she filed her application.  *See* 20 C.F.R. § 404.320(b)(3).  Plaintiff filed her application on November 17, 2004 (Tr. 23, 57-59).  Hence, Plaintiff must show not only that she became disabled on or before December 31, 2004, but that her disability continued until at least one year before she filed her application; in other words, since November 17, 2003.

Plaintiff's relevant work history included work as a billing clerk and telephone solicitor (Tr. 25).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 15, 1997 (Tr. 25).  At step two, the ALJ found that Plaintiff had the following "severe" impairments: chronic lumbar myofascitis, obesity, diabetes mellitus, hypertension, bilateral carpal tunnel syndrome, asthma, a partial complex seizure disorder and major depression (Tr. 25-26).  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 26-27).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "sedentary work except she needs a sit/stand option and cannot stand more than ten minutes at a time, and lift ten pounds repetitively and occasionally, can never climb, crawl, bend, kneel, stoop or crouch, can only occasionally use either upper extremity for gross manipulation with no use of either extremity for fine manipulation, with no work near unprotected heights or near moving machinery or around hazards in the workplace and limited to simple, unskilled work" (Tr. 27).

At step four, the ALJ found that Plaintiff could not perform her previous work as a billing clerk or in telephone sales (Tr. 30).  At step five, the ALJ denied Plaintiff benefits, since the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as security monitor with 1,600 jobs in southeastern Michigan (Tr. 31).  Thus, the ALJ determined that Plaintiff was not under a disability as defined in the Social Security Act, at any time from July 15, 1997 (Plaintiff's alleged onset date) through December 31, 2004 (Plaintiff's date last insured) (Tr. 31).

### B.    Administrative Record

### 1.    Plaintiff's Testimony and Statements

At the hearing, Plaintiff testified that she was 37 years old, stood five feet-five inches tall, and weighed 360 pounds (Tr. 239-40).  Plaintiff stated that she last worked in 2004, when she did medical billing for Dr. Awan (Tr. 241, 244).  She said Dr. Awan let her go because she had memory problems and made mistakes (Tr. 244).  Before that, Plaintiff did telephone sales full time (Tr. 243).  Plaintiff said her fingers were usually numb because of carpal tunnel syndrome, which was worse in her right hand (Tr. 245).  Plaintiff complained of pain as well as numbness; the pain traveled up her arms from her wrists (Tr. 245).  Because of the pain, Plaintiff stated that she could not usually hold anything with her right hand (Tr. 246).

Plaintiff testified that she had stopped driving in 2004 (Tr. 246, 252).  She had not had surgery to treat her carpal tunnel syndrome (Tr. 246).  Dr. Awan treated the pain in her back and arms with medication (Tr. 247).  Plaintiff stated that she took Vicodin four to five times each week (Tr. 248).  She took insulin daily for diabetes but, while she said her blood sugar was not "totally" under control, she did not believe diabetes impacted her ability to work (Tr. 248-49).  Plaintiff also took medication for headaches, and claimed she had a migraine "all the time" (Tr. 250).

Plaintiff further testified that she had partial complex seizures (Tr. 250).  She took medication for them, but the medicine did not control her seizures (Tr. 250).  Plaintiff stated that she could fall during a seizure and last fell two days prior to the hearing (Tr. 251).  Plaintiff stated that her first seizure occurred in September 2004 (Tr. 252).

Plaintiff testified that she made simple meals with a microwave (Tr. 253).  She spent her days watching television or sleeping (Tr. 254).  She did not leave her house alone, but did go

-4-

shopping or dined out with friends (Tr. 255). Plaintiff claimed her condition has worsened over time (Tr. 258). In 2004, it was the repetitive use of her hands that bothered her; her back pain was not as bad then as it was at the time of the hearing (Tr. 258).

### 2.    Medical Evidence

Plaintiff received treatment from Dr. M. Awan, who in June 1996, indicated diagnoses of carpal tunnel syndrome, diabetes, obesity, and depression (Tr. 147, 148). In August 1996, Dr. Awan noted Plaintiff complained of headaches, which he attributed to diabetes (Tr. 144). In October 1996, Plaintiff complained of back pain and Dr. Awan diagnosed lumbosacral myofascitis (Tr. 141). Dr. Awan treated Plaintiff's pain – which Plaintiff stated included the right hand, neck, and back – with Vicodin (Tr. 135, 139). Plaintiff continued to complain of pain in 2000 (Tr. 166). Dr. Awan continued to treat this pain – which Plaintiff said was in her lower back and left leg – with medication (Tr. 166). In October 2002, Dr. Awan noted that Plaintiff complained of pain in her neck that radiated to her shoulders and upper back as well as headaches (Tr. 165). Dr. Awan continued to treat Plaintiff's pain with medication (Tr. 165).

In March 2003, Plaintiff saw Dr. Awan for gastritis, stomach pain, and diarrhea (Tr. 190). Dr. Awan noted Plaintiff made complaints of pain in her low back and neck at visits in May, June, July, and September (Tr. 158, 159, 160, 161, 189).

In May 2004, Dr. Awan diagnosed left sacrolitis and radiculitis in Plaintiff's cervical spine, which he treated with a nerve blocker injection (Tr. 177). Plaintiff reported that after the injection that her pain was getting better, and Dr. Awan noted that the sacrolitis and radiculitis were resolving (Tr. 176). That same month, however, Plaintiff complained of headaches and neck pain, for which Dr. Awan prescribed Toradol (Tr. 173, 175). A November 2004 treatment note from Dr. Arshad Pervez noted that Plaintiff complained of neck pain that

radiated to both hands (Tr. 169).  Dr. Pervez also indicted diagnoses of carpal tunnel syndrome, diabetes, hypertension, and obesity (Tr. 169).  His plan was to keep Plaintiff on her medication (Tr. 169).

A CT scan of Plaintiff's head taken in January 2005 was normal (Tr. 183).  A radiology report from the next day noted a history of memory lapse and syncope, but also noted a normal CT scan of the head (Tr. 154).  Dr. Awan completed a physical capacities evaluation of Plaintiff on January 5, 2005 (Tr. 185-86).  He opined that Plaintiff could sit, stand, and walk for one hour in an eight-hour day (Tr. 185).  He indicated Plaintiff could lift up to five pounds occasionally (Tr. 185).  Dr. Awan believed Plaintiff could not use her hands for simple grasping, pushing/pulling, or fine manipulation; neither did he believe Plaintiff could use her feet for leg controls (Tr. 185-86).  He opined that Plaintiff required "complete freedom to rest frequently without restrictions" (Tr. 186).  He noted that Plaintiff had heart complications, asthma, and diabetes (Tr. 186).  Plaintiff used an inhaler "as needed" for her asthma (Tr. 186).  Dr. Awan believed Plaintiff's obesity played a part in her medical problems (Tr. 186).  Dr. Awan did not mention seizures or brain disorder in this report, but five days later, he noted in a letter that Plaintiff had presented with several symptoms consistent with a neurological disorder, including blackouts, memory loss, and insomnia (Tr. 187).  He recommended Plaintiff see a neurologist (Tr. 187).

In March 2005, Dr. K. Sheth, a psychiatrist, conducted a mental residual functional capacity (RFC) assessment (Tr. 192-96).  Dr. Sheth noted Plaintiff's diagnosis of depression but concluded that her activities of daily living were not markedly limited by her depression prior to December 2003 and that Plaintiff retained the mental functional capacity to do simple work on a sustained basis with adequate pace and endurance (Tr. 194).  Dr. Sheth did not offer an opinion

as to Plaintiff's abilities after December 2003 because he believed Plaintiff's insured status expired at that time (Tr. 192).

The state disability determination services also conducted a physical RFC assessment in March 2005 (Tr. 211-19). This assessment indicated Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand/walk and sit for six hours in an eight-hour day, and had no limitations in her ability to push and pull other than the noted weight limitations (Tr. 212). The assessment did not indicate any manipulative or visual limitations, but limited Plaintiff to occasional "postural" activities (climbing, bending, stooping, kneeling, crouching, and crawling) (Tr. 214). The reviewer noted that Plaintiff's medical records did not indicate diabetes resulted in any end organ damage and that the diagnosis of myofascial syndrome was a "best guess" (Tr. 212). The reviewer's notes also indicated that an X-ray taken in October 2002 showed a normal lumbar spine and that straight leg testing was negative (Tr. 219). These notes also indicated that Plaintiff was able to walk on her heels and toes without difficulty and that her gait and stance were normal (Tr. 219). A chest X-ray taken in February 2003 was also normal (Tr. 219).

In 2005, Plaintiff also received treatment at the University of Michigan (Tr. 281-411). She went to the University's hospital in July because of shortness of breath (Tr. 281-83). A CT scan of her head taken that day revealed no acute intracranial abnormality (Tr. 390), but a treatment note from the next day indicated that Plaintiff had a history of seizures that began in November 2004 (Tr. 409). A July 2005 discharge summary indicated a chronic diagnosis of seizures secondary to a Chiari I malformation (Tr. 297). While the discharge summary noted the seizures, the doctor who authored it permitted Plaintiff to "work as able" but restricted Plaintiff from driving for six months (Tr. 297). Plaintiff returned to the university hospital in November 2005 for complications with her pregnancy (Tr. 303-05). Doctors induced labor, which resulted

in Plaintiff having three "absence seizures" (Tr. 304).  While each seizure lasted under one minute, doctors decided to deliver Plaintiff's child by Caesarian section (Tr. 304).  Plaintiff was discharged from the hospital on November 23, 2005 (Tr. 326-30).  The discharge summary noted that Plaintiff had been admitted for a pulmonary edema (Tr. 326).  According to the discharge summary, Plaintiff could drive "as tolerated" and work "as desired" (Tr. 327).

The record contains no medical records from 2006.

Dr. Lawrence Hudson, a neurologist, submitted a letter dated July 6, 2007, to Plaintiff's attorney (Tr. 225).  Dr. Hudson wrote that he first saw Plaintiff in August 2005 for episodes of unresponsiveness, staring, and lip smacking that began in November 2004 (Tr. 225).  Dr. Hudson indicated that they were "almost certainly" complex partial seizures that had proven resistant to treatment with medication (Tr. 225).  He opined that this condition was disabling (Tr. 225).  Dr. Hudson also noted the Chiari malformation but believed it was likely asymptomatic (Tr. 225).

### 3.    Vocational Expert

During the hearing, the ALJ asked the vocational expert to consider a hypothetical person with Plaintiff's vocational profile who could lift up to 10 pounds regularly and occasionally; could stand no more than 10 minutes at a time; needed a sit/stand option; could not engage in any postural activities; could not work at unprotected heights or around operating machines or other hazards; and who could only perform simple, unskilled work (Tr. 271).  The vocational expert stated that such a person could not perform Plaintiff's past work but could perform such sedentary occupations as sorter (1,200 jobs), bench assembler (3,000 jobs) or surveillance system monitor (1,600 jobs) (Tr. 271).  The vocational expert asked what jobs this hypothetical person could do if she were also restricted to no fine hand manipulation bilaterally and occasional gross

manipulation (Tr. 271-72).  The vocational expert replied that such a person could still perform the surveillance monitor jobs (Tr. 272).

### C.        *Plaintiff's Claims of Error*

Plaintiff argues on appeal that the ALJ's RFC finding is deficient for three reasons: (1) the RFC failed to account for Plaintiff's seizure disorder; (2) the ALJ did not explicitly accommodate Plaintiff's obesity; and (3) the RFC is contradicted by Dr. Awan's opinion that Plaintiff was disabled.  Plaintiff also argues that the hypothetical question posed to the vocational expert did not adequately account for Plaintiff's limitations in concentration, persistence, or pace.

## III.   DISCUSSION

### A.        *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In

deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de

novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of

course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including

that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.

Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may...consider the credibility of a claimant when making a

determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)

(the "ALJ's credibility determinations about the claimant are to be given great weight,

particularly since the ALJ is charged with observing the claimant's demeanor and credibility.")

(quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree

is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony,

and other evidence.").  "However, the ALJ is not free to make credibility determinations based

solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486

F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

 If supported by substantial evidence, the Commissioner's findings of fact are conclusive.

42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely

because it disagrees or because "there exists in the record substantial evidence to support a

different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006);

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241;

*Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

-11-

Title II benefits are available to qualifying wage earners who become disabled prior to the

expiration of their insured status; Title XVI benefits are available to poverty stricken adults and

children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).

While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.
>
> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.   *Analysis and Conclusions*

As noted earlier, Plaintiff raises four arguments on appeal. Each argument is addressed below:

#### 1.   **Seizure Disorder**

Plaintiff devotes the majority of her motion for summary judgment arguing that the RFC finding fails to account for her seizure disorder, which Plaintiff argues is disabling (Pl. Br. at 9-13). Plaintiff cites Social Security Ruling 83-20 to argue that at times it may be possible to infer that the onset of a disabling impairment occurred prior to the date of the first recorded medical examination (Pl. Br. at 11). Plaintiff notes that the Fifth and Eighth Circuits have held that a retrospective diagnosis can be corroborated with lay evidence. *Id*. at 11-12 (citing *Loza v. Apfel*, 291 F.3d 378 (5th Cir. 2000); *Jones v. Chater*, 65 F.3d 102 (8th Cir. 1995)).

Defendant responds that the ALJ's decision is consistent with the authority Plaintiff cites. Defendant is correct.  The ALJ acknowledged that Plaintiff developed a seizure disorder and included it among Plaintiff's severe impairments at step two of his sequential analysis (Tr. 25). The ALJ also considered medical records from after the expiration of Plaintiff's insured status to establish the existence of this impairment, including a CT scan from January 2005, and medical records from the University of Michigan and Dr. Awan in 2005 (Tr. 29).

The ALJ further noted that the medical record did not document any deterioration in her condition that resulted in additional functional limitations until after her insured status had expired:  "While [Plaintiff] has developed additional complications since that time, as of December 31, 2004, when her disability insured status expired, [Plaintiff] retained the residual functional capacity to perform simple unskilled work with the additional limitations noted above" (Tr. 30).  Substantial evidence supports this conclusion.  As the ALJ noted, the January 2005 CT scan of Plaintiff's head was normal (Tr. 29, 183).  In fact, another CT scan of the head from July 2005 was also normal (Tr. 390).  The ALJ also noted that hospital records from 2005 indicated that Plaintiff's seizures did not begin until November 2004 – within two months of the expiration of Plaintiff's insured status (Tr. 29, 403, 409).

Plaintiff also challenges the ALJ's conclusion that Plaintiff's seizures were well controlled with medication (Pl. Br. at 12).  Plaintiff notes that Dr. Hudson noted that medication never controlled the seizures and that, from the time of onset, they occurred several times weekly, sometimes even in clusters on a single day.  *Id.* (citing Tr. 226).  Plaintiff notes that Dr. Hudson also opined that because of these seizures, Plaintiff was disabled from their onset.  *Id.* (citing Tr. 227).

-14-

Defendant responds that there are several problems with this argument. First, Defendant avers that, even if the ALJ incorrectly concluded medicine controlled the seizures soon after their initial onset, the ALJ correctly surmised that at least through the Plaintiff's date last insured and into early 2005, they were not disabling. Defendant is correct. The ALJ accurately noted that the medical record documents very few seizure episodes in 2005 and only one in 2004. The record contains scant evidence of their frequency beyond citations to a seizure in November 2004, a second in April 2005, and another that year in November (Tr. 29). The ALJ also noted that while Dr. Hudson indicated Plaintiff's seizures worsened, the medical record indicates they did not do so until "well after [Plaintiff's] disability insured status expired" (Tr. 29).

Other evidence in the record supports the ALJ's conclusion. Plaintiff's mother testified that Plaintiff did not have her first seizure until November 2004 (Tr. 262-63). Yet she submitted a function report in January 2005 that made no mention of Plaintiff's seizures (Tr. 82-89). In that report, Plaintiff's mother noted that Plaintiff was able to drive short distances and went grocery shopping each month (Tr. 85). She ascribed Plaintiff's limitations to her pain or her tendency to forget things (Tr. 82-85). Plaintiff herself submitted a function report the same day and also omitted mention of any seizures (Tr. 90-97). Additionally, the doctors at the University of Michigan were aware of Plaintiff's seizures but did not find them disabling. Plaintiff's July 29, 2005, discharge report indicated that Plaintiff should not drive for six months on account of the seizures but Plaintiff could "[w]ork as able" (Tr. 297). A November 23, 2005, discharge report permitted  "driving as tolerated, work as desired" (Tr. 327).

Defendant avers that there is a second and perhaps more compelling reason why Plaintiff's argument fails. Dr. Hudson's statements and opinion that Plaintiff cites appear in a letter Dr. Hudson authored in October 2008 (Tr. 226-27). This argument is also well taken. The

-15-

ALJ issued his decision in November 2007 – almost a year before Dr. Hudson drafted his letter (Tr. 23-32).  The ALJ never received this document, and so was not privy to these opinions. Plaintiff did not submit this letter to the ALJ, but rather to the Appeals Council (Tr. 5-9, 226-27). It is well-settled that in this circuit, where the Appeals Council considered new evidence but declined review, district courts cannot consider such evidence in deciding whether to uphold, modify, or reverse the ALJ's decision.  *See, e.g., Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-49 (6th Cir. 1996).  The Sixth Circuit explained that a plaintiff could seek remand pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of this evidence, but would first need to establish materiality and good cause.  *See id*. at 149.  Plaintiff has advanced no such argument, let alone made the requisite showing of materiality and good cause.  It is her burden to do so.  *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[T]he burden of showing that a remand is appropriate is on the claimant."); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  Plaintiff has therefore waived any argument that a sentence six remand is appropriate for the ALJ to consider this new evidence.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (providing that remand under sentence six was inappropriate where plaintiff failed to cite the relevant section of the statute or argue the merits of remand).  Accordingly, I find that the ALJ appropriately addressed Plaintiff's seizure condition.

### 2.  Obesity

Plaintiff next argues that the ALJ failed to assess the impact of her obesity on her ability to perform work-related activities since the ALJ's decision does not include a discrete analysis of its limiting effects (Pl. Br. at 13).  Plaintiff relies on a case from the Third Circuit.  *Id.* citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3rd Cir. 2009).  However, the law in this circuit is far less favorable to her.  In this jurisdiction, no special or discrete analysis is required.  See *Bledsoe v.*

*Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) ("It is a mischaracterization to suggest that

Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese

disability claimants.").  The Sixth Circuit is satisfied that an ALJ considered a claimant's obesity

if, for example, the ALJ explicitly mentioned the claimant's obesity in his finding of facts or if

evidence on which the ALJ relied, such as an expert's or doctor's report, considered it.  See *id*.

Here, the ALJ explicitly found Plaintiff's obesity was a severe impairment (Tr. 25), and he noted

that she stood 5'6" and weighed 323 pounds (Tr. 28).  Many of the medical and treatment reports

noted Plaintiff's weight.  This is enough.  See *Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071,

2010 WL 3199693, at *7 (6th Cir. Aug. 12, 2010) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504

(7th Cir. 2004)) ("Every medical opinion that the ALJ evaluated acknowledged Coldiron's

obesity.  Thus, by utilizing the opinions of these physicians in fashioning Coldiron's RFC, the

ALJ incorporated the effect that obesity has on the claimant's ability to work into the RFC he

constructed.").  While the ALJ did not explicitly explain what elements of the RFC finding

resulted from Plaintiff's obesity, it is clear that the ALJ accounted for it.  The ALJ found that

Plaintiff could not engage in work that involved any climbing, crawling, bending, kneeling,

stooping, or crouching (Tr. 27).  The ALJ further found that Plaintiff could stand for no more

than 10 minutes at a time and required a sit/stand option (Tr. 27).  These postural and exertional

limitations directly address the problems in mobility typically associated with obesity.

### 3. Dr. Awan's Opinion

Plaintiff next argues that this matter should be remanded because the ALJ did not account

for all the limitations resulting from her other impairments (Pl. Br. at 15-17).  In particular,

Plaintiff argues that the ALJ should have credited Dr. Awan's opinion that Plaintiff required

"complete freedom to rest frequently, without restriction."  *Id.* at 16 (citing Tr. 186).  Plaintiff

notes that the vocational expert opined that such a limitation would preclude competitive employment. *Id.* (citing Tr. 272). Because Dr. Awan was a treating physician, Plaintiff argues, the ALJ should have given the opinion controlling weight, or at least have given good reasons for not doing so. *Id.*

The issue of whether Plaintiff is disabled within the meaning of the Social Security Act is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 474 (6th Cir. 2008). "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

In this matter, the ALJ explained why he gave Dr. Awan's opinion little weight: "As for the opinion evidence, Dr. Awan opined that [Plaintiff] could not sustain sedentary work but his limitations do not have much basis in his clinical records and are given little weight" (Tr. 30). This is consistent with the regulation cited above and is a "good reason" for not fully crediting Dr. Awan's opinion. Dr. Awan rendered this opinion as part of a physical capacity evaluation he completed on January 5 – shortly after Plaintiff's insured status expired (Tr. 185-86). The ALJ accepted certain limitations Dr. Awan specified that did find support in Dr. Awan's notes or the record as a whole, including his opinion that Plaintiff could not use her upper extremities for fine manipulation and even had limitations with upper extremity gross manipulation (Tr. 27, 185-86). But Dr. Awan's opinion regarding Plaintiff's need to rest found no such support in the record. At no time prior to this assessment did Dr. Awan prescribe or state that Plaintiff required such liberal amounts of rest. Dr. Awan treated Plaintiff's impairments, including pain, with medication only. He never indicated the medication insufficiently controlled Plaintiff's pain and symptoms, or that Plaintiff experienced debilitating fatigue as a side effect. In short, substantial evidence supports the ALJ's decision to discount Dr. Awan's suggested restriction concerning Plaintiff's need for complete and unrestricted rest.

### 4.  Mental Impairments

Finally, Plaintiff argues that, because in the preliminary assessment of the severity of her mental impairments the ALJ found that Plaintiff was "moderately" impaired in concentration, persistence, or pace, the ALJ's RFC finding and matching hypothetical question, restricting Plaintiff to "simple tasks," was inadequate (Pl. Br. at 13-15).

As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained

and evaluated.  This technique was designed to work in conjunction with the sequential

evaluation process set out for the evaluation of physical impairments.  *See* 20 C.F.R. §§

404.1520a, 416.920a.  Congress laid the foundation for making disability determinations when

mental impairments are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (i) of this
> section that an individual is not under a disability, in any case
> where there is evidence which indicates the existence of a mental
> impairment, shall be made only if the Commissioner has made
> every reasonable effort to ensure that a qualified psychiatrist or
> psychologist has completed the medical portion of the case review
> and any applicable residual functional capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the completion of "a

standard document outlining the steps of this procedure."  20 C.F.R. § 404. 1520a(d).  The

regulation further requires the standard document to be completed and signed by a medical

consultant at the initial and reconsideration levels, but provides other options at the

administrative law judge hearing level.  *Id.*  Under this procedure, the Commissioner must first

make clinical findings, as to whether the claimant has a medically determinable mental disorder

specified in one of eight diagnostic categories defined in the regulations.  *See Merkel v. Comm'r*

*of Soc. Sec.*, 2008 WL 2951276, *10 (E.D. Mich. July 29, 2008), citing, 20 C.F.R. Pt. 404. Subpt.

P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its

impact on a claimant's ability to work.  "This is assessed in terms of a prescribed list of

functional restrictions associated with mental disorders."  *Merkel*, at *10, citing, 20 C.F.R. Pt.

404, Subpt. P, App. 1, § 12.00C.  The first area of functional restriction is "activities of daily

living."  This area requires the Commissioner to determine a claimant's ability to clean, shop,

cook, take public transportation, maintain a residence and pay bills.  *See Merkel*, at *10.  Under

the second functional area – "social functioning" – the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id.* The third functional area – "concentration, persistence, or pace" – refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id.* The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id.*

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: none, mild, moderate, marked, and extreme. *See Pauley v. Comm'r of Soc. Sec.*, 2008 WL 2943341, *9 (S.D. Ohio July 30, 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: none, one or two, three, four or more. *Id.* "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4). Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404.1520a(d)(1). If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *See Merkel*, at *10, citing, 20

-21-

C.F.R. § 404.1520a(c)(2).  The Commissioner will determine that the claimant is disabled if the

mental impairment is a listed mental disorder and at least two of the criteria have been met.  *See*

*Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq*.  If the severe mental

impairment does not meet a listed mental disorder, the Commissioner must perform a residual

functional capacity assessment to determine whether the claimant can perform some jobs

notwithstanding his mental impairment.  *See Merkel*, at *10, citing, 20 C.F.R. §§

404.1520a(c)(3), 416.920a(c)(3).

        The undersigned concludes that the ALJ's determinations regarding Plaintiff's mental

impairments are fully supported by the substantial evidence in the administrative record.  In this

matter, the State Agency examiner specifically stated that Plaintiff retains the ability "to do

simple work on [a] sustain[ed] basis with adequate pace and endurance..." (Tr. 194).  This

finding is not significantly different than the hypothetical question the ALJ relied on, which

limited Plaintiff to "simple, unskilled work" (Tr. 27).

        Finally, decisions in this district reflect the conclusion that a moderate impairment in

concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled

work.  *See e.g., Latarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836, *3 (E.D. Mich. April 20,

2009); *Street v. Comm'r of Soc. Sec.*, 390 F.Supp.2d 630, 638 (E.D. Mich. 2005), citing, *Chafin*

*v. Comm'r of Soc. Sec.*, 2005 WL 994577, *2, 4 (E.D. Mich. April 26, 2005) (ALJ's hypothetical

question addressed plaintiff's mental deficiencies sufficiently by limiting him to "simple,

unskilled work."  Further, although the plaintiff had "moderate" deficiencies of concentration,

persistence, or pace he could nonetheless perform the work of an assembler, packager, inspector,

and security monitor); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 662 (E.D. Mich. 2004)

("ALJ took into account [the] [p]laintiff's depression ... by including limitations within the hypothetical ... limiting the possible jobs to simple, unskilled, and routine work").  The undersigned concludes that the ALJ's hypothetical question properly took into account Plaintiff's mental impairments, as found by the ALJ to be credible.  Thus, there is no basis for overturning the ALJ's decision, which the undersigned finds is supported by substantial evidence.

## III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  July 15, 2011

*Certificate of Service*

I hereby certify that a copy of the foregoing document was served on the parties of record
on this date, July 15, 2011, by electronic and/or first class U.S. mail.

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*